25CA1564 Colorado Springs v Snoddy 08-13-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1564
El Paso County District Court No. 17CV31927
Honorable Eric Bentley, Judge

---

City of Colorado Springs, Colorado,

Petitioner-Appellee,

v.

Ajhalei Snoddy,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE JOHNSON
Freyre and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

---

Marc Smith, Acting City Attorney, Anne H. Turner, Assistant City Attorney, Colorado Springs, Colorado, for Plaintiff-Appellee

Ajhalei Snoddy, Pro Se

¶ 1     Respondent, Ajhalei Snoddy (Snoddy), appeals the district court's order denying her motion, which the court construed under C.R.C.P. 59 and 60, and entering judgment in favor of petitioner, the City of Colorado Springs (the City).  Snoddy contends that the district court erred because the valuation of her condemned property was improperly assessed with another and she was entitled to her just compensation.  We affirm.

## I.     Background

¶ 2     In late 2016, the City attempted to negotiate with several owners to purchase their real properties for a public works project. At that time, Snoddy's father, Francisco Serna (Serna), owned one of the properties affected by the City's plans.  His property was identified in the record as Parcels A and B.  In January 2017, Serna executed a quitclaim deed that conveyed ownership of Parcel A to Birddog, LLC (Birddog) and granted Serna a permanent easement over Parcel A.  Although the quitclaim deed was notarized and acknowledged by Snoddy, it was not recorded with the El Paso County Clerk and Recorder by Serna or an agent on his behalf.  At all relevant times, Serna remained the owner of Parcel B.

1

¶ 3     In August 2017, following failed negotiations between the City

and Serna, the City filed a petition in condemnation and requested

immediate possession of the parcels.[1]  Even though Serna claimed

that he had notified the City of the quitclaim deed, the City named

only Serna as the record title owner of Parcels A and B.

¶ 4     In October 2017, the district court held a hearing on the City's

request for immediate possession of Parcels A and B.  During a

court break, Serna, or an agent on his behalf, recorded the

quitclaim deed with the El Paso County Clerk and Recorder.

Snoddy was at the October 2017 hearing, and later court filings

revealed that she was the sole officer of Birddog.[2]

¶ 5     At the conclusion of that hearing, the court awarded the City

immediate possession of Parcels A and B.  Then, Birddog,

represented by counsel who was also representing Serna,

---

[1] The other named parties in the City's petition were dismissed from the lawsuit, as they obtained the funds to which they were entitled or disclaimed any interest in the property.

[2] At the hearing, Serna represented that he had an "officer" of Birddog present in the courtroom.  At that same hearing, the court rejected the argument that, because Serna had conveyed Parcel A to Birddog, the entity should have also been served with the petition. It found that Birddog was not a record owner at the time the petition had been filed because the quitclaim deed had not been recorded until the hearing.

intervened in the action.  Serna and Birddog's counsel later withdrew, at which point the court informed Birddog that it could not represent itself in the court proceeding.  Snoddy notified the court that she had dissolved Birddog, thus becoming the fee owner of Parcel A, with Serna retaining an interest in Parcel A because of the permanent easement.

¶ 6    In April 2023, a valuation hearing was held before a three-person commission of freeholders.  *See* § 38-1-105(1), C.R.S. 2025.  During this hearing, Snoddy spoke minimally; instead, Serna primarily spoke for himself and on Snoddy's behalf.  At the close of arguments, the parties discussed the "undivided basis rule" — which allows the City to value properties subject to eminent domain in a single valuation even if there are multiple persons claiming an interest in the property — and how to incorporate this rule into the commission's instructions.  Serna agreed that both properties should be valued "collectively."  But he and Snoddy also wanted the commission to determine the "highest and best use" of each property separately.  The commission valued the property collectively at $103,203.75.

¶ 7     In August 2023, the district court entered a final judgment that awarded Serna and Snoddy $57,842.19 in total compensation due and owing, which considered pre- and post-judgment interest.[3]

¶ 8     Serna and Snoddy filed various post-trial motions, which the court denied as untimely but also rejected on the merits. A division of this court affirmed the district court's final judgment in Serna's direct appeal. *See City of Colorado Springs v. Serna,* (Colo. App. No. 23CA1710, Sep. 5, 2024) (not published pursuant to C.A.R. 35(e)).

¶ 9     In January 2025, Serna filed a demand for funds with the district court, which the court initially denied due to the City's objection. Ultimately, the district court ordered disbursement of the funds to "respondents."

¶ 10    In May 2025, Snoddy filed a motion demanding her compensation, as well as requesting a new valuation of Parcel A

---

[3] The total valuation took into account $64,100 that the City had previously deposited in the court registry as a condition of the City taking possession of the parcels following the October 2017 hearing. The $64,100 had been withdrawn earlier in the proceeding and paid to the named parties or their attorneys for the interests they held in the property. The district court's final judgment noted the amount to be $57,591.51, but the City filed an amended motion with updated calculations reflecting that the City had deposited a total of $57,842.19 into the court registry as of June 20, 2023.

separate from Parcel B. The district court construed Snoddy's requests for relief under Rules 59 and 60, the City objected, and the court denied her motion. Snoddy now appeals.

## II. Standard of Review and Applicable Law

¶ 11    We review a district court's denial of a Rule 59 motion for an abuse of discretion. *See Zolman v. Pinnacol Assurance*, 261 P.3d 490, 502 (Colo. App. 2011). We review a court's order denying relief under any subpart of Rule 60(b), except for Rule 60(b)(3), for an abuse of discretion. *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 314 (Colo. 2010). A district court abuses its discretion if its actions are manifestly arbitrary, unreasonable, or unfair, or it misapplied or misunderstood the law. *Credit Serv. Co. v. Skivington*, 2020 COA 60M, ¶ 24.

¶ 12    As for Rule 60(b)(3), we review de novo a court's order that denies setting aside a judgment on the grounds it is void. *Garcia v. Puerto Vallarta Sports Bar, LLC*, 2022 COA 17, ¶ 25.

¶ 13    Under Rule 59(a), a party may move for post-trial relief seeking (1) a new trial of all or part of the issues; (2) judgment notwithstanding the verdict; (3) amendment of findings; or (4) amendment of judgment. The motion must be filed within

fourteen days of entry of the judgment or such greater time as allowed by the court. *Id.*

¶ 14    Under Rule 60(b), a court may relieve a party of a final judgment on the following grounds:

> (1) [m]istake, inadvertence, surprise, or excusable neglect; (2) fraud . . . , misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Motions under subsections (1) and (2) must be brought no more than 182 days after the judgment was entered, while all other motions under Rule 60(b) must be brought within a "reasonable time." *Id.*

## III.   Analysis

¶ 15    In Snoddy's motion, she argued that the judgment should be set aside and she should have a new valuation conducted because (1) Parcel A's valuation was improperly consolidated with Parcel B when Parcel A should have been valued separately, with Snoddy identified as its property owner; (2) the court engaged in ex parte

6

communications with the City and Serna; and (3) she was entitled to her just compensation. The court denied Snoddy's motion as being "grossly untimely" under Rules 59 and 60. It further found that, as the City argued, Snoddy had waived any request for a separate valuation because she had agreed to Parcels A and B being assessed collectively. The court also adopted the remainder of the City's arguments from its response. On appeal, Snoddy raises the same arguments.

¶ 16    We affirm the district court's order denying Snoddy's motion under Rules 59 or 60 because (1) a judgment is not void even if it contains statutory errors; (2) she waived any arguments objecting to a separate valuation of the properties; and (3) her motion was untimely filed.

### A.    The Judgment Is Not Void

¶ 17    Snoddy contends that, because the district court allowed the City to value Parcels A and B separately under section 38-1-104, C.R.S. 2025, the court violated the statute and, thus, lacked jurisdiction to enter the judgment. This is incorrect.

¶ 18     The burden of demonstrating that a judgment is void lies with the party challenging it, and the invalidity must be supported by clear and convincing evidence.  *Goodman Assocs.*, 222 P.3d at 315.

¶ 19     Even if we agreed with Snoddy that section 38-1-104 requires a separate valuation of Parcels A and B — an issue we need not decide because, as we discuss *infra* Part III.B, Snoddy waived this argument — a court's violation of a statute does not render its judgment void.[4]

¶ 20     "Generally speaking, a judgment is void if the court lacked personal jurisdiction over the parties or subject matter jurisdiction over the cause of action, or if it was entered in violation of a party's procedural due process rights to notice or to be heard."  *L & R Expl. Venture v. Grynberg*, 271 P.3d 530, 533 (Colo. App. 2011); *see also Goodman Assocs.*, 222 P.3d at 314.  "A void judgment is a judgment

---

[4] Without deciding the issue, we question whether we may depart from the court's usage of the undivided basis rule in eminent domain proceedings.  "Under [the undivided basis] approach, the fair market value of the property is determined without regard to the separate interests to which it may be subject."  *Total Petroleum, Inc. v. Farrar*, 787 P.2d 164, 166 (Colo. 1990).  *Farrar* was decided by the supreme court, and this court is bound by the precedents of that court.  *See People in Interest of N.K.S.*, 2025 COA 100, ¶ 11 (*cert. granted* Mar. 30, 2026).

entered where jurisdictional defects exist, and [it] is a nullity." *In re Marriage of Pierce*, 720 P.2d 591, 592 (Colo. App. 1985). But "[a]n erroneous judgment is one rendered in accordance with the method of procedure and practice allowed by law, but contrary to the law." *Id.*

¶ 21 Snoddy appears to contend that the district court derives its jurisdiction to hear eminent domain cases from statute. This is incorrect. "[S]ubject matter jurisdiction concerns the court's authority to deal with the class of cases in which it renders judgment, not its authority to enter a particular judgment in that class." *Minto v. Lambert*, 870 P.2d 572, 575 (Colo. App. 1993). District courts derive their authority from the state constitution. Colo. Const., art. VI, § 9. Nothing in the eminent domain statutes "provides [any] restriction on [the constitution's] grant of subject matter jurisdiction" to the district courts. *Minto*, 870 P.2d at 576 (holding that failure to comply with required element of the eminent domain statutes does not affect a district court's subject matter jurisdiction). Therefore, even assuming the court violated the eminent domain statute when valuating Parcels A and B, this did not render the judgment void. The district court had subject matter

jurisdiction to preside over the City's condemnation action and direct the commission to decide the valuation. And Snoddy does not contest the court's personal jurisdiction over her.

¶ 22     To the extent she raises any procedural due process argument that the judgment is void, she does so on the basis that the City engaged in ex parte communications with the district court judge's judicial assistant. She contends that the City and the judicial assistant discussed the City's objections to disbursement of the monies in the court's registry following entry of the August 2023 judgment without notice or her involvement.

¶ 23     "The fundamental requisites of due process are notice and the opportunity to be heard." *Franz v. Indus. Claim Appeals Off.*, 250 P.3d 755, 758 (Colo. App. 2010) (quoting *Hendricks v. Indus. Claim Appeals Off.*, 809 P.2d 1076, 1077 (Colo. App. 1990)). "Due process requires 'that the parties be apprised of all the evidence to be submitted and considered, and that they be afforded a reasonable opportunity in which to confront adverse witnesses and to present evidence and argument in support of their position.'" *Delta Cnty. Mem'l Hosp. v. Indus. Claim Appeals Off.*, 2021 COA 84, ¶ 28 (quoting *Hendricks*, 809 P.2d at 1077). What constitutes sufficient

due process is flexible; no specific procedure is mandated "as long as the basic opportunity for a hearing and judicial review is present." *Id.* (quoting *Ortega v. Indus. Claim Appeals Off.*, 207 P.3d 895, 899 (Colo. App. 2009)). A party must be given "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Whiteside v. Smith*, 67 P.3d 1240, 1248 (Colo. 2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

¶ 24 Before setting aside a judgment as void for lack of due process, reviewing courts should "carefully examine" whether the party was aware of the proceedings and afforded a sufficient opportunity to be heard. *First Nat'l Bank of Telluride v. Fleisher*, 2 P.3d 706, 714 (Colo. 2000).

¶ 25 While Serna's email address was listed on the emails between the City and the judicial assistant, Snoddy's email address was not. Even so, once the judicial assistant realized that the City had objected, the judicial assistant stated, "[I]t is apparent that there is a dispute over which party is entitled to the funds in the court registry." The judicial assistant directed that no more emails be sent on the matter and stated, "[E]ither side may file an appropriate motion, and the [c]ourt will decide the issue after it is briefed."

¶ 26    Following this email, the court issued an order on January 2, 2025, indicating that the parties should refrain from emailing court staff about this matter and that "[a]ny party wishing to have funds disbursed to them shall file an appropriate motion, and the [c]ourt will decide the issue after it is fully briefed." Serna filed a demand, but Snoddy did not. On February 5, 2025, the City filed a response indicating that it did not object to the court disbursing the monies from the court registry. Snoddy was served with the City's response.

¶ 27    Throughout the court record, Serna and Snoddy were listed as living at the same address in Austin, Texas. There is no indication in the record that court orders were returned as undeliverable to Snoddy, or that Snoddy moved or used another address for court filings. Indeed, her May 2025 motion identified her address as the same one used by the City when she was served with the City's February 2025 response. Likewise, Snoddy has provided no evidence that the January 2, 2025 order was not sent to the proper Austin, Texas address or that she otherwise lacked notice of it. Therefore, we cannot say that the judgment is void on the grounds

12

that her due process rights were violated. *See Delta Cnty. Mem'l Hosp.*, ¶ 28.[5]

### B. Snoddy Waived the Separate Valuation Argument

¶ 28 Snoddy claims that she did not waive her argument that she seeks a separate valuation of Parcel A because "the record contains no evidence that [she] knowingly or intentionally relinquished her statutory right to an individualized valuation under [section] 38-1-104." She further contends that she did not "consent" to a single valuation by simply responding to an inquiry directed to Serna.

---

[5] The City appears to take the position that, if Snoddy has a dispute with Serna about the amount of compensation she is entitled to from the monies the court disbursed from the registry, she may file a separate action under section 38-1-105(3), C.R.S. 2025. That provision says, "If there is more than one person interested as owner or otherwise in the property and they are unable to agree upon the nature, extent, or value of their respective interests in the total amount of compensation so ascertained and assessed on an undivided basis by . . . [the] commission," then "the nature, extent, or value of said interests shall thereupon be determined according to law in a separate and subsequent proceeding and distribution made among the several claimants thereto." *Id.*; *see also Mulberry Frontage Metro. Dist. v. Sunset Equip. Co.*, 2023 COA 66, ¶ 35 (recognizing that section 38-1-105(3) allows "persons 'interested as owner or otherwise in the property'" to come to an agreement on how to distribute the monies among themselves or file a separate proceeding to determine distribution). We take no position on the merits of Snoddy filing such an action except to say that, to the extent she has any remedy, it does not lie in filing postjudgment motions in this case.

¶ 29 Snoddy misstates the applicable legal standard for waiver. Unlike waiver of a constitutional right, waiver of a statutory right, such as that in section 38-1-104, "must be voluntary, but need not be knowing and intelligent." *Babcock v. People*, 2025 CO 26, ¶ 29 (quoting *Finney v. People*, 2014 CO 38, ¶ 16). Waiver may be explicit, such as "when a party expressly abandons an existing right or privilege," or implicit, such as "when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion." *Id.* (quoting *Forgette v. People*, 2023 CO 4, ¶ 28).

¶ 30 At the April 2023 valuation hearing, Serna presented most of the arguments for both himself and Snoddy. But Snoddy specifically agreed to Instruction No. 17, which asked the three commissioners to do two things: (1) ascertain the value of Parcels A and B collectively under the "undivided basis rule," as proposed by the City; and (2) ascertain the highest and best use of Parcels A and B separately under definitions provided by Serna and Snoddy. As explained by the city attorney at the hearing:

> The City does not object to that. Mr. Serna, in
> his submission, proposed alternative
> definitions for highest and best use on the top

of Page 2. And he and I have conferred and agreed that looking at the top of Page 2 of his submission, he says, "Take note of the following definition while making your 'highest and best use' findings."

The city attorney further stated:

But we've also discussed the notion that in condemnation proceedings, there's a rule called the undivided basis rule. So what that means is that while there may be various uses or interests involved, what the Commission is to determine is a single value for the property as a whole.

And, therefore, while Respondents have requested separate determinations for highest and best use for each parcel, the Certificate nonetheless still asks for a single value determination for the property as a whole pursuant to the undivided basis rule.

The commissioners conferred on the instruction and had questions as to what they should be inputting in the "highest and best use" blanks for Parcels A and B.

¶ 31 One of the commissioners asked the city attorney if it was asking the commission to "value the parcels separately," to which the city attorney said, "No. Collectively, but with separate highest and best use determinations." The commission accepted the amended instructions, and the court printed out updated copies for

15

everyone's review. The court then asked Serna and Snoddy if the new document reflected the language they wanted, to which Snoddy said, "It does, thank you."

¶ 32 Therefore, contrary to Snoddy's assertion that Serna answered for her, the record reflects that she had an opportunity to review the modified Instruction No. 17 and responded for herself. As modified, the instruction indicated that the commission was to value Parcels A and B separately only as to the highest and best use, but that it would provide a single valuation for Parcels A and B under the undivided basis rule. On this record, we agree with the district court that Snoddy waived her argument for a separate valuation of the property under section 38-1-104, as she voluntarily agreed to the modified instruction. *See Babcock,* ¶ 29.

### C. Snoddy's Motion Was Not Timely

¶ 33 Although Snoddy does not directly address how her January 2025 motion would have been timely, she continues to dispute that Rules 59 and 60 apply. Indeed, she claims she did not seek relief under those rules and so their analytical framework is inapplicable. Instead, she argues that she sought relief under the eminent domain statutes.

¶ 34    But the only mechanism to seek further relief once a district

court enters judgment — which it did in August 2023 — is to timely

file a motion under one of those civil rules.  *See People in Interest of*

*J.A.U. v. R.L.C.*, 47 P.3d 327, 331 (Colo. 2002) ("Once a valid

judgment is entered, the only means by which the trial court may

thereafter alter, amend[,] or vacate the judgments is by appropriate

motion under either C.R.C.P. 59 or 60.").  Therefore, because the

court properly construed Snoddy's motion as seeking relief under

Rules 59 and 60, we also agree with it when it found her motion

was "grossly untimely."

¶ 35    Snoddy filed her Rule 59 motion two and a half years after

entry of the August 2023 final judgment, rendering it untimely.  *See*

*Colo. Nat'l Bank of Denv. v. Friedman*, 846 P.2d 159, 167 (Colo.

1993).  For the same reason, the court did not abuse its discretion

by denying her relief under all the subparts of Rule 60(b) requiring

that such a motion be filed within 182 days from entry of the

judgment.  *See id.*

¶ 36    Under Rule 60(b)(5), a motion must be brought within a

"reasonable time."  Courts have construed reasonableness on a

case-by-case basis, with the timeliness of notice being a critical

17

factor. *See In re Marriage of Smith*, 928 P.2d 828, 830 (Colo. App. 1996) (finding that, although wife did not file her Rule 60(b) motion until twenty-two months had passed since entry of the judgment, it was timely because she had no notice until two months before her motion was filed).

¶ 37    Similar to our rejection of Snoddy's due process argument, we again find that she has failed to prove that she lacked notice of the court's rulings she now seeks to set aside. Nor did she file her Rule 60(b)(5) motion within a "reasonable time." She was present at the October 2017 and April 2023 hearings; she actively filed motions through counsel or pro se; and, after receiving notice of the court order, she failed to object to the City's opposition to the funds being disbursed from the court registry. Thus, we discern no abuse of discretion. *See Friedman*, 846 P.2d at 167.

## IV.   Conclusion

¶ 38    The district court's order is affirmed.

JUDGE FREYRE and JUDGE KUHN concur.

18